[Civ. No. 48399. Second Dist., Div. Four. Dec. 16, 1977.]

CITY OF LONG BEACH, Plaintiff and Respondent, v.
CATHERINE A. DAUGHERTY, Defendant and Appellant;
STATE OF CALIFORNIA, Defendant and Respondent.

CITY OF LONG BEACH, Plaintiff and Respondent, v.
GENEVIEVE SHEEHAN, Defendant and Appellant;
STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Fadem, Berger, McIntire & Norton, Fadem, Berger & Norton and Michael M. Berger for Defendants and Appellants.

Leonard Putnam, City Attorney, and Clemons C. Turner, Deputy City Attorney, for Plaintiff and Respondent.

Evelle J. Younger, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Katherine E. Stone, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**KINGSLEY, J.**—Defendants Daugherty and Sheehan appeal from a judgment declaring that there exists a public easement for recreational purposes over certain property owned by them. With a modification requested by the city and state, we affirm the judgment.

Defendants own property, in the City of Long Beach, located on the ocean beach of that city. Originally, the state's answer sought to determine the boundary between the city-owned submerged tideland and the property of the defendants. During the course of the trial, the parties entered into agreements fixing the seaward boundary of their properties at what is commonly known as the "Chapter 138 line."[1] The

[1] As recited in the judgment, the "Chapter 138 line, refers to that certain line described in section 7 of Chapter 138, Statutes of 1964, 1st Extraordinary Session, a survey map of

trial court found that the entire property of the defendants' shoreward of that line, including improved portions thereof, to be subject to an easement in favor of the public. At the motion for new trial, and here, the city and state waived and abandoned any claim to an easement over the improved portions of the property. In accordance with that present position, we modify the judgment as hereinafter provided.

The properties herein involved are located on a sandy beach in the City of Long Beach, lying between Ocean Boulevard and the Pacific Ocean. In the past, the shoreline was eroded and half or more of the properties were covered by water. In 1954, the city began to make sand fills to alleviate the erosion and the city spent more than $2 million to stabilize the beach. Sandfill was placed on the seaward 38 feet for the Sheehan lot and the seaward 64 feet of the Daugherty property.

The court found the public had made continuous use of the properties for 60 years. The public used the beach for hunting, fishing, swimming, shell collecting, ball playing, picnicking, without asking permission from the owners. The public used the "*entire*" beach as if it were a public beach. Captain Miller, a lifeguard from 1922 to 1966, was asked whether the public used "the areas in front of the houses on the beach," and he responded, "All of the time." He said, "Regardless of where the house was, they laid in front of the house, spread their blankets out and that was their place."

The city put up a rest room in the vicinity of the beach, there were lifeguard services, and between 250 to 350 people a day used the beach[2] during the period between 1924 and 1935. Beginning in 1924, the city maintained the beach by cleaning and grading, including maintaining the area in front of the houses, and between the houses, and the owners were aware of the city's maintenance.

The subject properties are between Granada Avenue on the west and 55th place on the east. The city caused a series of sandfills on the subject property from 1945 to 1960. These sandfills widened the beach so that it extended approximately 500 feet southerly or seaward of the Chapter 138 line. On the Sheehan parcel, the fill extended northerly to within 95 feet

which was recorded March 11, 1968, as Document No. 1498 in Book M-2796, Page 449, Official Records in the office of the County Recorder of Los Angeles County and filed therein as No. F-1267."

[2]The record on this point appears to refer to the entire beach and not the defendants' property alone.

of Ocean Boulevard, and on the Daugherty parcel, the fill extended northerly to cover the seaward 64 feet of the property. The fill was paid for by public funds and later out of tideland trust revenue. Part of the Sheehan property and Daugherty property is improved.

Appellants' photographs showed no one on the beach near the subject properties on beach-type holidays such as Labor Day and the Fourth of July. (Some homes had signs which said, "Private Property—Permission to Pass Revocable at any Time.") However, there is no citation in the long record as to which homes had the signs and at what dates the signs were up.

The trial court found the recreational easements were dedicated before 1922 and the trial court concluded the *Mansell* case (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462 [91 Cal.Rptr. 23, 476 P.2d 423]) established only fee title and boundaries and did not preclude the finding of a public recreational easement. The lower court relied on *Gion* v. *City of Santa Cruz* (1970) 2 Cal.3d 29 [84 Cal.Rptr. 162, 465 P.2d 50], which held that use by the public for the prescriptive period without asking or receiving permission from the fee owner resulted in implied dedication of a recreational easement to the public.

I

One of the issues in the case at bench, as stated by appellants, is whether the subject beachfront properties were impliedly dedicated to public use under *Gion* v. *City of Santa Cruz, supra,* 2 Cal.3d 29, or whether that implied dedication was precluded by the decision in *City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, which fixed the boundaries of specific properties in the case at bench.

Appellants' first argument is that the judgment below undermined the *Mansell* decision which had settled the boundaries of the land in question and also had settled matters of title in the land. As a reading of the opinion in that case discloses, *Mansell* was a proceeding to validate an agreement, entered into between the city and various property owners, seeking to settle long-standing and complicated disputes over the tidelands in Alamitos Bay. The agreements involved purported to settle the boundary line between the tidelands that were the property of the city as transferee from the state and the upland areas, adjoining those tidelands, which were thereby recognized as the private property of the upland owners. The lands herein involved were among those involved in

those agreements and in that decision. Nothing in the agreements or the decision is directed to the existence of any easements over any of the land therein involved. Nor was there any need, in view of the purpose of the agreements involved, to consider any issue as to easements. Ownership of an easement has no necessary relationship to ownership of a fee title. An easement is defined as an interest in the land of another which entitles the owner of the easement to a limited use or enjoyment of the servient tenement. (See *Eastman* v. *Piper* (1924) 68 Cal.App. 554 [229 P. 1002].) Nothing in the agreements involved in *Mansell*, or in that decision, relates to or affects the existence of a recreational easement in the lands therein involved.[3]

## II

Appellants argue that the case at bar is distinguishable from *Gion* v. *City of Santa Cruz, supra,* and *Dietz* v. *King* (1970) 2 Cal.3d 29 [84 Cal.Rptr. 162, 465 P.2d 50], in both matters of policy and on its facts. Appellants also point to legal articles suggesting that the decision of *Gion* and *Dietz* should not be expanded beyond their facts and should not be applied to the facts at bar.

First, appellants point out that there are means of access to the public beach in question other than access by going over the subject properties, whereas in *Gion* and in *Dietz*, which were bounded by the high tideline, there were no means of access beyond the public tidelands. However, it does not appear from *Gion-Dietz* that the public is entitled to a recreational easement only in situations where that easement is the only means of access. *Gion-Dietz* is not so limited. The Supreme Court in the *Gion-Dietz* cases considered matters of governmental maintenance of the land and public use of the land and not merely the question of whether there were other means of access to the beach.

Appellants argue that there were no structures maintained by the owners on the disputed property in *Gion* or in *Dietz*, whereas appellants have structures on their land. Since, because of the abandonment above discussed, the particular portions of the Sheehan and Daugherty properties that are now the subject of this appeal are not improved, this argument does not aid appellants' position.

---

[3]The quitclaim deeds involved in *Mansell*, and the deeds given to effect that decision expressly involve only "sovereign" rights; they are expressly limited to such rights and do not apply to claims of easement in the public.

Because the case at bench, in light of the modification sought by the city and state, does not involve any claim to property over which a public easement may have existed in the past but which, without opposition by any public body, has later been improved or fenced, we need not, and do not, consider the effect of such a succession of events on a present claim to an easement.

Appellants argue that, in *Gion,* the property owners did not object to public use, and the appellants in the case at bar claim they did ask people to leave. There is no showing that appellants' predecessors in title asked people to leave, and, although the testimony is conflicting, there is a great deal of evidence to show that people were not asked to leave, and that no significant efforts were made to get the public to leave. Mrs. Sheehan merely asked people to leave when they were "rowdy" and Mrs. Daugherty said no one was ever on her land. "If the owner has not attempted to halt public use in a significant way, however, it will be held as a matter of law that he intended to dedicate the property or an easement to the public, and evidence that the public used the property for the prescriptive period is sufficient to establish dedication." (*Gion* v. *City of Santa Cruz, supra,* 2 Cal.3d 29, 41.)

Appellants argue that in *Gion-Dietz* the use by the public was current but in the case at bar, the usage was not current. There is some testimony in the case at bar to the effect that the public usage was current and there was some testimony concerning current cleaning and maintenance by the city.

Appellants argue that, in *Gion-Dietz,* the public rightly believed that the property was public, but that the public could not have held such a belief in the case at bar, because the parcels in question were improved with houses. That is a misreading of the opinion in those cases. Their holding is that it is the intention of the property owner that controls and, as stated in the quotation above given from *Gion,* the existence of an intention to dedicate may be inferred, as a matter of law, from long acquiescence.

Appellants argue that the court will not presume that owners of the property today knowingly permit the general public to use their land. However, the court has not made such a presumption. It was only after the taking of evidence that the court found a recreational easement, and that finding was based on public use of the beach, and maintenance of the beach by governmental entities.

■ Appellants argue that a *Gion-Dietz* easement is not created unless members of the public used the property believing that the public had a right to use it asserting that a finding on belief is essential. (*Gion* v. *City of Santa Cruz, supra,* 2 Cal.3d 29, 39.) In *Gion,* the court said that what must be shown is that "[the] persons used the property believing the public had a right to such use." However, the *Gion* court also said: "Litigants . . . seeking to show that land has been dedicated to the public need only produce evidence showing that persons have used the land as they would have used public land." There is nothing in the language of *Gion* to suggest that a specific finding on a public's "rightful belief" is essential.

### III

■ Appellants argue that the court findings were not supported by substantial evidence. Appellants argue that there was insufficient evidence to show substantial use by diverse members of the general public using the property for at least five years. We do not agree. Captain Miller, the lifeguard captain who was in charge of the beach from 1922 to 1966, testified that, from 1924, the public used the whole beach for recreational purposes including the area in front of the houses.

People who used the beach did not ask permission from the homeowners and the property owners rarely objected to the use although they were aware of the public's use. The lifeguards raked the whole length of the beach, including the area *up to and in front of and between the houses,* and the property owners were aware that the city was cleaning the beach. Several residents of the area also testified to public use of the beach *immediately in front of the houses*; and that the use was without permission from the homeowners and without objection. A resident of the area also testified to public use of the beach *between the houses* in order to get to the water. Public employees testified that they cleaned the beach going *as close as one or two feet of any house.* Photographs of the sand in front of the property show heavy use indicated by many footprints in the sand.

Thus, there is substantial evidence to show public maintenance of the beach and public use of the beach since and before 1924, continuing on for many years beyond the necessary period.

Appellants rely on *County of Orange* v. *Chandler-Sherman Corp.* (1976) 54 Cal.App.3d 561, 566 [126 Cal.Rptr. 765], to show that use must

be substantial rather than casual usage for the court to find a recreational easement. That case is not here applicable since the evidence and the findings show much more than casual usage by small numbers of the public.

Appellants complain that evidence on public use of the beach in the case at bar was not specifically directed to use of the beach in front of the particular subject parcels. It is true that some of the city's evidence applied to the beach as a whole rather than to the specific area in question. However, the trial court could properly infer from that testimony, which referred to the beach as a whole, that the evidence related to and included the subject properties. In addition to the testimony about the beach as a whole, there was specific testimony concerning use of the beach by the public in front of appellants' houses and between the houses.

### IV

Appellants argue that it is unfair to apply *Gion* "retroactively." Appellants appear to argue that it is unfair to apply *Gion* to facts that existed prior to the *Gion* decision. But, in *Gion* itself, the facts existed prior to any decision finding an implied dedication in the particular situation that existed before that court. Therefore, the argument is without merit.

The judgment in superior court case No. SO-C-23517 (Sheehan) is modified as follows:

Delete in their entirety paragraphs 1 and 2 of said judgment and substitute therefor the following language:

"1. That at the time of the commencement of this action, title to an easement for recreational purposes in, over, upon and across a portion only of the subject parcel of real property, all as more particularly hereinafter in this paragraph described, was and now is vested in the City of Long Beach, a municipal corporation, as owner in fee of said easement, for itself and on behalf of the public generally. Said easement is described as follows:

"An easement in, over, upon and across the parcel of real property hereinafter described for public recreation purposes, and public uses

incidental thereto, including but not limited to parking, picnicking, sunbathing, swimming, surfing, strolling, fishing, boating, playing sports, general viewing, access to the beach and the Pacific Ocean, public protection and policing and maintenance, to wit:

"The westerly 25 feet of Lot 7 in Block 44 of the Resubdivision of Part of Alamitos Bay Townsite, in the City of Long Beach, County of Los Angeles, State of California, as per map recorded in Book 4 pages 75 and 76 of Maps, in the office of the County Recorder of said County. Said parcel shall be deemed to be bounded on its southerly or seaward side by the Chapter 138 Line*, on its westerly side by the westerly line of said Lot 7 and its prolongation southerly to the Chapter 138 Line and on its easterly side by the easterly line of said westerly 25 feet of Lot 7 and its prolongation southerly to the Chapter 138 Line.

"EXCEPT that portion of the westerly 25 feet of Lot 7 lying northerly of a line parallel to and located southerly 123.50 feet, measured at right angles, from the southerly line of Ocean Boulevard, a public street, which public street abuts said lot on its northerly side.

"Title to the northerly 123.50 feet referred to in the exception to the description set forth immediately hereinabove was not and is not now subject to or encumbered by any easement for public recreational purposes in, over, upon and across all or any portion thereof.

"2. That the defendant Genevieve Sheehan, as owner of the underlying fee title in and to the subject parcel of real property, has no estate, right, title, lien or interest whatsoever in or to said easement, or in any part thereof, and said defendant has no right to build, use, occupy or maintain any permanent structures, buildings or improvements on or over said easement area, or any part thereof, or otherwise make any use of said westerly 25 feet of Lot 7 or any part thereof which would in any way unreasonably interfere with the above described rights of plaintiff and the public under said easement."

The judgment in superior court case No. SO-C-23518 (Daugherty) is modified as follows:

"*As used herein the Chapter 138 Line refers to that certain line described in Section 7 of Chapter 138, California Statutes of 1964, 1st Extraordinary Session, Survey Map of which was recorded March 11, 1968 as Document No. 1498 in Book M-2796 Page 449, Official Records, in the office of the County Recorder of said Los Angeles County and filed therein as No. F-2167."

Delete in their entirety paragraphs 1 and 2 of said judgment and substitute therefor the following language:

"1. That at the time of the commencement of this action, title to an easement for recreational purposes in, over, upon and across a portion only of the subject parcel of real property, all as more particularly hereinafter in this paragraph described, was and now is vested in the City of Long Beach, a municipal corporation, as owner in fee of said easement, for itself and on behalf of the public generally. Said easement is described as follows:

"An easement in, over, upon and across the parcel of real property hereinafter described for public recreation purposes, and public uses incidental thereto, including but not limited to parking, picnicking, sunbathing, swimming, surfing, strolling, fishing, boating, playing sports, general viewing, access to the beach and the Pacific Ocean, public protection and policing and maintenance, to wit:

"Lot 3 in Block 51 of Resubdivision of Part of Alamitos Bay Townsite, in the City of Long Beach, County of Los Angeles, State of California, as per map recorded in Book 4 pages 75 and 76 of Maps, in the office of the County Recorder of said County. Said parcel shall be deemed to be bounded on its southerly or seaward side by the Chapter 138 Line*, on its westerly side by the westerly line of said Lot 3 and its prolongation southerly to the Chapter 138 Line and on its easterly side by the easterly line of said Lot 3 and its prolongation southerly to the Chapter 138 Line.

"EXCEPT that portion of Lot 3 lying northerly of a line parallel to and located southerly 95 feet, measured at right angles, from the southerly line of Ocean Boulevard, a public street, which public street abuts said lot on its northerly side.

"Title to the northerly 95 feet referred to in the exception to the description set forth immediately hereinabove was not and is not now subject to or encumbered by any easement for public recreational purposes in, over, upon and across all or any portion thereof.

"*As used herein the Chapter 138 Line refers to that certain line described in Section 7 of Chapter 138, California Statutes of 1964, 1st Extraordinary Session, Survey Map of which was recorded March 11, 1968 as Document No. 1498 in Book M-2796 Page 449, Official Records, in the office of the County Recorder of said Los Angeles County and filed therein as No. F-2167."

"2. That the defendant Catherine A. Daugherty, as the owner of the underlying fee title in and to the subject parcel of real property, has no estate, right, title, lien or interest whatsoever in or to said easement, or in any part thereof, and said defendant has no right to build, use, occupy or maintain any permanent structures, buildings or improvements on or over said easement area, or any part thereof, or otherwise make any use of said Lot 3 or any part thereof which would in any way unreasonably interfere with the above described rights of plaintiff and the public under said easement."

As so modified, the judgments are affirmed. The city shall recover its costs on appeal.

Files, P. J., and Jefferson (Bernard), J., concurred.

A petition for a rehearing was denied January 3, 1978, and appellants' petition for a hearing by the Supreme Court was denied February 8, 1978.