Filed 9/14/18; Certified for Publication 9/27/18 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE INLAND OVERSIGHT COMMITTEE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF SAN BERNARDINO, <br><br> Defendant and Respondent; <br><br> FIRST AMERICAN TITLE INSURANCE COMPANY, <br><br> Real Party in Interest and Respondent. | E064836 <br><br> (Super.Ct.No. CIVDS1509296) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County. Gilbert G. Ochoa, Judge. Affirmed.

Briggs Law Corporation, Cory J. Briggs and Anthony N. Kim for Plaintiffs and Appellants.

1

Gary D. Saenz, City Attorney, and Steven P. Graham, Deputy City Attorney, for Defendant and Respondent.

Gresham, Savage, Nolan & Tilden, John C. Nolan, Mark A. Ostoich, Martin P. Stratte, and Jonathan E. Shardlow, for Real Party in Interest, Defendant, and Respondents.

## I. INTRODUCTION

This matter relates to a proposed development in the Highland Hills area of the City of San Bernardino that has been pending in various permutations for decades. Plaintiffs and appellants The Inland Oversight Committee (IOC), CREED-21, and Highland Hills Homeowners Association (HOA) filed the present lawsuit in 2015, contending that proposed changes to the project violate the California Environmental Quality Act, Public Resources Code § 21000 et seq. (CEQA), and certain provisions of the Water Code. Real party in interest and respondent First American Title Insurance Company (First American) is the developer that proposed the changes at issue. Defendant and respondent City of San Bernardino (the City) approved the changes under an expedited procedure for minor modifications. The expedited procedure was incorporated into a stipulated judgment in a previous lawsuit regarding the development brought by HOA against the City and the former developer (First American's predecessor in interest) concerning the development.

This is the second appeal regarding the same proposed changes to the project to come before this court. In a related but separate lawsuit ("the related matter"), HOA challenged the trial court's order confirming that the proposed changes constituted minor

modifications appropriately approved under the above-mentioned expedited procedure. (*Highland Hills Homeowners Association v. City of San Bernardino* (Dec. 11, 2017, E064737) [nonpub. opn.] (*Highland Hills*).)  We affirmed the trial court's order.  (*Ibid.*)

In the present matter, plaintiffs appeal from the judgment entered against them after the trial court sustained without leave to amend the City's and First American's demurrer to plaintiffs' first amended petition for writ of mandate and complaint. Applying the doctrines of res judicata and collateral estoppel, the trial court found that plaintiffs' CEQA claims were barred by the preclusive effect of HOA's previous lawsuit, and that judicially noticeable documents showed the City did not violate the Water Code. We affirm the judgment.

Also pending here are a motion to dismiss the appeals of IOC and CREED-21 filed by the City and First American, together with supporting requests for judicial notice, and a motion to strike certain portions of the motion to dismiss filed by IOC and CREED-21.  These motions and requests for judicial notice will all be denied as moot in light of our conclusions regarding the merits of the appeal.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In our opinion in the related matter, we summarized the factual background of the development at issue as follows:

"In 1982, the City approved the 'Highland Hills Specific Plan 82-1' (Specific Plan), describing a proposed residential development on a 541-acre site in the northeastern section of the City of San Bernardino.  The City also certified the Environmental Impact Report for the Specific Plan (Specific Plan EIR).

3

"In 1985, the City amended the Specific Plan to allow for the construction of low- and moderate-income multi-family residential units in an area where single-family units had originally been planned. HOA challenged the change to the project, bringing suit against the City and the developer (the predecessor-in-interest to First American). That lawsuit resulted in the settlement agreement that, as later amended, is at issue in the present appeal.

"The settlement agreement, which was incorporated into a stipulated judgment entered on July 3, 1989, noted that the developer had prepared two plans of development, with the 'North Plan' to be the 'preferred Plan of Development' pursuant to the Specific Plan. The North Plan provided for, among other things, the construction of up to 1,730 residential dwelling units, as well as a golf course. After entry of the stipulated judgment, as contemplated in the settlement agreement, the City incorporated the North Plan into its updated General Plan, and certified a final EIR for the General Plan.

"In February 1992, HOA, the City, and the former developer agreed to an 'Addendum' to the settlement agreement, which was approved by the trial court and incorporated into the stipulated judgment. Among other things, the Addendum reduced the number of multi-family dwelling units permitted under the North Plan from 1,200 to 566. The Addendum also acknowledged that freeway construction as part of the development had resulted in the removal of many trees, and that HOA had 'concern[s]' regarding this and other, related issues. The Addendum specified that a particular canyon and its 'existing mature trees will be left to meander through' the golf course to be

4

constructed, and that the former developer would 'cause over one thousand (1000) new trees to be planted over the golf course.'

"In 2001, the City's Planning Commission approved a tentative tract map for the North Plan, which reduced the maximum total number of residential dwelling units (including both single and multi-family) from 1,730 to 1,516.

"Later in 2001, HOA, the City, and the former developer agreed to the Second Addendum to the stipulated judgment, which, like the first addendum, was approved by the trial court and incorporated into the stipulated judgment. The parties agreed that the environmental impacts of [the] North Plan, as modified by the tentative tract map, had been adequately reviewed pursuant to CEQA, so 'no subsequent or supplemental environmental impact report is required.'

"The Second Addendum also introduced a new application process to facilitate approval of any 'minor modifications' to the project that 'the passage of time may demonstrate . . . are necessary or appropriate . . . .' Under this process, the City's Director of Development Services (development director) reviews any modifications requested by the developer to determine whether they constitute 'minor modifications' as defined in Section 1.4 of the Second Addendum. Specifically, 'minor modifications' are those 'which result in development which is equal to or less intense from the standpoint of environmental impacts under CEQA, than development of the Highland Hills Property pursuant to the North Plan including, without limitation, (a) fewer residential dwelling units, (b) less gross leasable commercial space, (c) changes in improvement locations which are equal to or less intrusive than the location of improvements under the North

5

Plan, (d) enhancement of architectural, landscape and hardscape improvements, (e) more efficient mitigation measures/conditions of approval resulting from advancement in scientific knowledge, know how or improved technology, or (f) other modifications which the [development director] determines are similar to the foregoing, or any combination of the same (even if, in such combination, some elements intensify and other elements deintensify, but in the aggregate the modification is equal to or less intense from the standpoint of environmental impacts under CEQA, than development of the Highland Hills Property pursuant to the North Plan).'

"The Second Addendum provides for the approval of minor modifications to be a ministerial act: 'If [the development director] determines that a modification in the North Plan is a Minor Modification, then [he or she] shall be obligated to approve the Minor Modification in the North Plan.' If, however, the development director determines that the requested modification is not a 'minor modification' as defined by the Second Addendum, the matter must be referred to the Planning Commission for consideration.

"In 2014, First American, which had taken over the project from the former developer, applied for approval of modified construction plans (the Modified North Plan) as minor modifications pursuant to the process adopted in the Second Addendum. At the City's request, an independent environmental consultant prepared an evaluation of the Modified North Plan. The consultant's report discusses in turn each of the criteria for '[m]inor [m]odifications' as defined in the Second Addendum, and separately addresses each 'specific CEQA topic, as listed in a standard Initial Study Environmental Checklist Form (Appendix G of the State CEQA Guidelines) . . . .' It notes, among other things,

6

that the Modified North Plan, if implemented, would reduce the maximum total number of dwelling units constructed from 1,516 to 695, and eliminate all previously contemplated commercial uses, including a gas station and convenience store, as well as the golf course. In comparison to the unmodified North Plan, the total area disturbed by construction, the volume of earthwork required, and the project's impact on jurisdictional streams and wetlands, would each be substantially reduced. Acreage devoted to parks would be substantially increased. All proposed development would be eliminated from the northern, higher elevations of the project site, thereby 'protecting the visual integrity of this important ridge line.' The consultant concluded that the Modified North Plan met each of the criteria for '[m]inor [m]odifications' set forth in the Second Addendum, and that, with respect to each of the specific 'CEQA Environmental issues,' the overall adverse impact of the Modified North Plan would be less than that of the unmodified North Plan.

"In December 2014, the City's development director approved First American's application, agreeing that the changes proposed in the Modified North Plan constituted minor modifications as defined by the Second Addendum. The approval memorandum notes that in considering First American's application, the director had considered the modified project plans and tentative tract map and supporting technical reports, the report by the environmental consultant, and an 'updated Mitigation Monitoring and Reporting Program dated December 1, 2014 . . . .' The approval also explicitly 'adopt[s] and make[s] herein all of the findings contained' in the environmental consultant's report. The City's Planning Commission subsequently rejected HOA's appeal of the

7

development director's approval, and the City's Mayor and Common Council upheld the Planning Commission's decision.

"In June 2015, First American and the City filed a motion requesting that the trial court confirm that First American's proposed changes complied with the terms of the Second Addendum and that no further CEQA review was required.  In August 2015, after a hearing on the matter, the trial court granted the motion, finding that 'the proposed Modified Plan is a minor modification under the Second Addendum § 1.4 thereby not requiring a supplemental or subsequent CEQA report under Pub. Res. Code § 21166.'" (*Highland Hills, supra*, E064737 at pp. 3-7.)

In December 2017, we affirmed the trial court's order in the related matter. (*Highland Hills, supra*, E064737 at p. 18.)  In so doing, we found HOA had failed to demonstrate either that the City eliminated any mitigation measures without due consideration or that there was a lack of substantial evidence supporting the City's conclusion that the Modified North Plan would have equally intense or less intense environmental impacts than the unmodified North Plan.  (*Ibid.*)  HOA therefore failed to demonstrate any error in the trial court's order confirming the City's approval of the Modified North Plan as a minor modification.  *(Ibid.)*

Meanwhile, on July 1, 2015, plaintiffs filed the lawsuit from which the present appeal arises.  The operative "Verified First Amended Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief Under the California Environmental Quality Act, The Water Code, and Other Laws" (petition), filed on August 10, 2015, asserts that the City's approval of First American's proposed changes to the project as

8

minor modifications under the process contemplated by the Second Addendum was "illegal." Under a single cause of action entitled "Illegality of the Project," plaintiffs assert violations of both CEQA and the Water Code. More specifically, plaintiffs allege that the Modified North Plan requires further CEQA review because of environmental impacts introduced by the changes to the project. They further allege that the modified project should not have been approved without conducting a water supply assessment pursuant to Water Code section 10910 et seq.

In September 2015, the trial court sustained without leave to amend the demurrer to the petition filed by the City and First American. The trial court dismissed the petition and entered judgment in favor of the City and First American in October 2015.

### III. DISCUSSION

**A. Standard of Review.**

A demurrer should be sustained when "[t]he pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) "We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.)

"'We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory.

9

[Citations.]  We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale.'"  (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.)

When a court sustains a demurrer without leave to amend, the plaintiff has the burden of proving how an amendment would cure the defect.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  If the plaintiff does not demonstrate on appeal "how he can amend his complaint, and how that amendment will change the legal effect of his pleading," we must presume the plaintiff has stated his allegations "as strongly and as favorably as all the facts known to him would permit."  (*Community Cause v. Boatwright* (1981) 124 Cal.App.3d 888, 902.)

## B.  Analysis.

### 1.  HOA's CEQA Claim Is Barred by Res Judicata.

Plaintiffs contend that HOA's CEQA claim is not barred pursuant to the doctrine of res judicata.  We disagree.

"Under the doctrine of res judicata, a valid, final judgment on the merits is a bar to a subsequent action by parties or their privies on the same cause of action."  (*Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 589.)  Whether causes of action in two lawsuits are the same for purposes of res judicata depends on whether they involve the same "primary right."  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681; see *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 ["[t]o determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory'"].)  "'The plaintiff's primary right is

10

the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based.'" (*Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 227.) "[A]n 'injury,' for purposes of determining a primary right, 'is defined in part by reference to the set of facts, or transaction, from which the injury arose.'" (*Id.* at p. 229.) In the CEQA context, if two actions involve the "'same general subject matter,'" but "involve distinct episodes of purported noncompliance," the doctrine of res judicata does not apply. (*Id.* at p. 228.)

The episode of purported noncompliance at issue in HOA's CEQA claim in the present case is not distinct from, but rather the same as the one already addressed in the related matter. HOA contends here that the City violated CEQA by failing to conduct further environmental review of the Modified North Plan, instead approving it as a minor modification to the project pursuant to the Second Addendum to the stipulated judgment entered in the earlier lawsuit. HOA has already litigated the same claim in the related matter and lost. The trial court held there that "the proposed Modified Plan is a minor modification under the Second Addendum § 1.4 thereby not requiring a supplemental or subsequent CEQA report under Pub. Res. Code § 21166." We affirmed the trial court's ruling. (*Highland Hills, supra*, E064737.) In so doing, we rejected HOA's arguments regarding each of the purported significant adverse environmental impacts specifically alleged in the present lawsuit. (*Ibid.*) HOA did not file a petition for review of our decision in the California Supreme Court, and the matter is now final. The doctrine of res judicata therefore applies, and HOA is barred from litigating the same claim again in the present suit.

11

Under California law, a judgment "is not final for purposes of res judicata during the pendency of and until the resolution of the appeal." (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954, fn. 11, disapproved on another ground in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4.) The trial court therefore acted prematurely when it found the doctrine of res judicata to apply in September 2015, when HOA's time to appeal the trial court's order in the related matter had not yet run (the notice of appeal in the related matter was timely filed in October 2015). Nevertheless, our review of the sufficiency of HOA's pleadings is de novo, and we review the trial court's ruling, not its reasoning. (*Walgreen Co. v. City and County of San Francisco, supra,* 185 Cal.App.4th at p. 433.) As things stand now, the doctrine of res judicata applies to bar HOA's CEQA claim, so we will affirm its dismissal.

In addition, we note briefly that similar reasoning would lead us to the conclusion that HOA's claim is barred by collateral estoppel. (See *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511-512 [stating standard for application of collateral estoppel].) Nevertheless, we will not devote any further discussion to the parties' arguments regarding the application of collateral estoppel because it is unnecessary to the disposition of the appeal.

### 2. *IOC and CREED-21 Are in Privity with HOA.*

Plaintiffs argue that res judicata "cannot be applied as to IOC and CREED-21 because they are not in privity with [HOA]." (Some capitalization omitted.) Again, we disagree.

"The concept of privity for the purposes of res judicata or collateral estoppel refers 'to a mutual or successive relationship to the same rights of property, or to such an identification of interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel. [Citations.]'" (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1069-1070 (*Citizens for Open Access*).) "A party is adequately represented for purposes of the privity rule 'if his or her interests are so similar to a party's interest that the latter was the former's virtual representative in the earlier action.'" (*Ibid*.) "We measure the adequacy of 'representation by inference, examining whether the . . . party in the suit which is asserted to have a preclusive effect had the same interest as the party to be precluded, and whether that . . . party had a strong motive to assert that interest." (*Id.* at p. 1071.)

According to plaintiffs' pleadings in the present lawsuit, HOA "has an interest in, among other things, promoting responsible land use and planning in and around the City of San Bernardino." IOC and CREED-21 share the same interest, as both are described as having "an interest in, among other things . . . promoting responsible land use and planning." Plaintiffs do not assert separate CEQA claims, but rather jointly allege that they "oppose the Project" and "seek to invalidate the Project's approval" because it "violates CEQA." The gravamen of the CEQA claim asserted in the present lawsuit by all three plaintiffs—that the modifications to the North Plan are not minor, but rather have serious potential environmental impacts, requiring additional CEQA review—is

13

identical to the position propounded by HOA in the related matter. (See *Highland Hills, supra*, E064737.) The purported serious environmental impacts specifically alleged by the three plaintiffs in the present action were also raised by HOA in the related matter. (See *Highland Hills, supra*, E064737.) And there is nothing in the record suggesting that HOA did not zealously litigate the related matter. (See *Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn., supra*, 60 Cal.App.4th at p. 1072.) We conclude, therefore, that IOC and CREED-21's interests were adequately represented by HOA in the related matter for purposes of the privity rule.

Plaintiffs assert in their briefing on appeal that IOC and CREED-21 are "advocating on behalf of the public," while HOA is "not suing in the public's interest," but rather as an association of homeowners seeking "to protect their property values to protect their homes." But plaintiffs have not attempted to articulate any manner in which those public and private interests are not aligned with respect to their jointly asserted CEQA claim. No lack of alignment appears from examination of plaintiffs' pleadings, which include no explicit allegation of any "private" harm HOA or its members may have suffered from the purported CEQA violations separate from any alleged harm to the public. IOC and CREED-21 therefore have an identity or community of interest with and adequate representation by HOA in the related matter. (See *Roberson v. City of Rialto* (2014) 226 Cal.App.4th 1499, 1513 [finding privity between individual asserting private interest and nonprofit organization asserting public interest on similar basis, and collecting case law].) Like HOA's CEQA claim, the CEQA claims advanced by IOC and CREED-21 are barred by res judicata.

14

### 3. Plaintiffs' Claims Under the Water Code Fail to State a Claim.

Plaintiffs argue that the Water Code requires the preparation of a water supply assessment (WSA) with respect to the Modified North Plan, and that the trial court erred in determining otherwise. We find no error.

Under provisions of the Water Code enacted in 1995 and amended in 2001, "[w]hen a proposed development is subject to CEQA, and it is also a 'project' within the meaning of Water Code section 10912, a WSA is required." (*Citizens for Responsible Equitable Environmental Development v. City of San Diego* (2011) 196 Cal.App.4th 515, 523; see Wat. Code, § 10910, subd. (b); see also generally Wat. Code, §§ 10910-10915.) The WSA is intended to assist local governments in making the discretionary decision of whether to approve a proposed development project. (*O.W.L. Foundation v. City of Rohnert Park* (2008) 168 Cal.App.4th 568, 576.) The WSA must be included in any CEQA document prepared for the project. (Wat. Code, § 10911, subd. (b).)

Plaintiffs' arguments that a WSA was required rest on the premise that the 2015 modifications to the North Plan constitute a discretionary project that should have been the subject of further CEQA review. But the premise is false. In the related matter, we affirmed the trial court's finding that "'the proposed Modified Plan is a minor modification under the Second Addendum § 1.4 thereby not requiring a supplemental or subsequent CEQA report under Pub. Res. Code § 21166.'" (*Highland Hills, supra*, E064737, p. 18.) As discussed above, plaintiffs are barred from relitigating that finding. Because the Modified North Plan is not subject to further CEQA review, the preparation

15

of a WSA is not required, and plaintiffs' claims of a Water Code violation were properly dismissed on demurrer.

### 4. *The Pending Motions and Requests for Judicial Notice Are Moot.*

The City and First American's motion to dismiss argues that the appeals of IOC and CREED-21 should be dismissed because they "are intentionally undercapitalized shell corporations being operated by a law firm, [plaintiffs' counsel] Briggs Law Corporation, for the purpose of circumventing the fundamental procedural requirement of standing . . . ." The motion is supported by several requests for judicial notice. Plaintiffs have not only opposed the motion, but filed a motion of their own, seeking to strike portions of the motion to dismiss.

Because we conclude plaintiffs' appeals fail on the merits, the parties' pending motions and supporting requests for judicial notice are moot, and they will be denied on that basis.

## IV.  DISPOSITION

The judgment is affirmed.  Respondents' motion to dismiss and supporting requests for judicial notice are denied as moot, as is plaintiffs' motion to strike portions of respondents' motion to dismiss.  Respondents are awarded their costs on appeal.

CODRINGTON
J.

We concur:

MILLER
          Acting P. J.
FIELDS
          J.

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE INLAND OVERSIGHT COMMITTEE et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF SAN BERNARDINO,<br><br>        Defendant and Respondent;<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>        Real Party in Interest and Respondent. | E064836<br><br>(Super.Ct.No. CIVDS1509296)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

Request having been made to this court pursuant to California Rules of Court, rule 8.1120(a) for publication of a nonpublished opinion heretofore filed in the above-entitled matter on September 14, 2018, and it appearing that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c),

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).  The opinion filed in this matter on September 14, 2018, is certified for publication.

CERTIFIED FOR PUBLICATION

                                                                CODRINGTON
                                                                                        J.

We concur:

MILLER
        Acting P. J.

FIELDS
                J.