Filed 1/26/21  In re K.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re K.M., et al., Persons Coming Under the Juvenile Court Law. | D077400 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J519479A, J519479B) |
| v. | |
| K.O. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Rohanee Zapanta, Judge.  Affirmed.

Elena S. Min, under appointment by the Court of Appeal, for Defendant and Appellant K.O.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant K.M.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Emily Harlan, Deputy County Counsel, for Plaintiff and Respondent.

K.O. (Mother) and K.M. (Father) appeal from orders of the juvenile court terminating their parental rights to their minor children, K.M. and K.O. (the children). They contend the juvenile court erred by finding the San Diego Health and Human Services Agency (the Agency) made reasonable inquiry to determine whether the children were subject to the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). The Agency asserts Father's appeal must be dismissed as untimely and disputes the parents' claims on the merits. We agree Father's appeal is untimely but address the ICWA issue in light of Mother's appeal. We conclude the Agency conducted sufficient inquiry under the circumstances and affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND

Given the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings and focus on the facts relevant to the ICWA claim at issue.

*Dependency Petition and ICWA Finding Regarding K.M.*

K.M. was born in January 2017. Mother tested positive for methamphetamine and amphetamine at birth and was placed on a Welfare and Institutions Code section 5150 hold shortly thereafter due to concerns she would harm herself or K.M.[1] Mother struggled extensively with severe mental health issues and addiction. She had three older children, each of whom was under the care and legal guardianship of a family member or friend.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Father admitted he was aware of Mother's methamphetamine use during the pregnancy. He told the Agency social worker they had some diapers and clothing for the baby, but nothing else, and their current living situation was " 'not baby friendly.' " Father also had two other children from a previous relationship, and each was subject to the jurisdiction of the juvenile court at the time. Father was receiving reunification services for the older children but had not had contact with them for several months.

K.M. was taken into protective custody on January 19, 2017, and the Agency filed a juvenile dependency petition on her behalf the next day.

In the detention report filed on January 23, 2017, the Agency indicated Mother previously denied Indian heritage and the juvenile court previously made a finding that ICWA did not apply to Father in the case concerning his older children. However, at the detention hearing the same day, the Agency indicated Mother was now claiming Indian heritage. The juvenile court noted Father was also claiming Cherokee ancestry and ordered Mother and Father to provide completed ICWA forms to the Agency. The court deferred on ICWA, made true findings on the petition, and ordered K.M. detained outside the care of Mother and Father.

Mother and Father each provided Parental Notification of Indian Status forms (form ICWA-020) on January 23. Mother indicated she "may have" Cherokee ancestry but provided no further information. Father did not check any of the boxes on the form but wrote, "Taylor Marshall - mggf [maternal great grandfather]" and "Cherokee."

In a jurisdiction and disposition report submitted before the next hearing, the Agency reported ICWA "does or may apply." Mother and Father had not submitted the more detailed ICWA-030 forms and had not made themselves available to the Agency since the last hearing. The Agency did

3

speak with the maternal grandmother and she reported Mother had no Native American or Alaska Native heritage. The maternal grandmother told the Agency she had taken a DNA test and the results indicated she was 99% European. She said Mother's biological father was Hispanic and gave the Agency his full name but indicated he left before Mother was born.

In an addendum report, the Agency indicated a social worker interviewed Father on February 10, 2017. Regarding ICWA, Father stated he was trying to get ahold of his cousin who tracked the family's lineage, but that his cousin had not provided him with any information regarding Native American heritage. He stated he believed his grandfather was half Cherokee. He further explained he did not know his father at all, so all of the family history was on his mother's side and provided information regarding his mother and maternal grandmother.

At the hearing on February 14, the Agency indicated it had not yet received the ICWA-030 forms from Mother or Father. The Agency indicated it had followed up with "some paternal aunt, maternal relatives"[2] and was waiting to gather more information from the parents, but, if the parents did not have any further information, it would send out ICWA notices with the information it did have that day. Father's counsel stated Father sent the ICWA-030 form to his brother,[3] but the brother had not returned the form.

---

[2]     While we cannot be certain, there are no other references to a paternal aunt in the record and it appears counsel for the Agency was instead referring to a maternal aunt that was considered for placement.

[3]     Father's biological father left the home when Father was one year old, and Father was raised by his stepfather, whom he refers to throughout the record as his father. It is unclear whether this brother or the cousin Father referenced are biological relatives of Father. Neither are listed on the ICWA notice forms prepared by the Agency.

4

The Agency asked if Father could provide a phone number of the "uncle whom he sent the information to," Father's counsel agreed, and the court ordered Mother and Father to remain after the hearing to provide updated information and contact information to the Agency social worker.

In an addendum report filed on March 7, 2017, the Agency indicated Father had not submitted the ICWA-030 form. Father told the Agency he sent the form to his cousin in Arizona and he was still awaiting its return. The Agency reported it had submitted inquiries and ICWA notice letters on February 27, 2017, with information gathered through interviews conducted by both the case social worker and an ICWA social worker. The Agency included an ICWA noticing grid and a copy of the notice. Mother indicated she was not aware of any information that had not already been provided to the Agency. At the associated hearing on March 8, the Agency reported it had sent ICWA notices to all identified tribes and the juvenile court continued to defer on ICWA.

In an addendum report dated March 20, the Agency submitted an updated notice matrix and letters from two of the three identified tribes indicating they would not intervene. The juvenile court set a special ICWA hearing on May 22.

In an addendum report submitted before the special ICWA hearing, the Agency recommended the juvenile court find ICWA did not apply. The Agency reported it had completed noticing to the Department of the Interior, the Bureau of Indian Affairs, and the identified Cherokee Tribes and there was no evidence K.M. was an Indian descendant or eligible for membership in any tribe. At the hearing on May 22, 2017, the Agency confirmed all identified tribes received notice and each responded confirming K.M. was not eligible for enrollment. The Agency therefore asked the court to find ICWA

5

did not apply. Counsel for the minor, Mother, and Father all submitted, and the court made a finding that ICWA did not apply.

Mother failed to make progress on her case plan and, in October 2017, the juvenile court terminated her reunification services as to K.M.

*Dependency Petition and ICWA Finding Regarding K.O.*

Mother and Father had another child, K.O., in November 2017. Mother and K.O. each tested positive for amphetamine and methamphetamine at birth. Mother admitted to using methamphetamine three days per week during the pregnancy, including the day before K.O. was born. Father stated he was not aware of Mother's drug use and had thought she was living in a safe place. Father reported he had not used drugs since January 2017 but stated he was homeless and could not care for a newborn baby.

The Agency filed a juvenile dependency petition on behalf of K.O. on December 5, 2017. In the associated detention report, the Agency indicated ICWA did not apply. The Agency reported a social worker asked Mother and Father if they had Indian ancestry on November 30, 2017, and both stated they did not. Mother and Father each submitted ICWA-020 forms indicating, "I have no Indian ancestry as far as I know." Father signed his form, but Mother did not, as she had only spoken to her counsel over the phone and was not physically present at the detention hearing on December 7. Given the denials, the juvenile court made a finding that ICWA did not apply to K.O.

The juvenile court detained K.O. outside of Mother and Father's care and set the matter for a jurisdiction and disposition hearing on February 8, 2018. At the jurisdiction and disposition hearing, the court made true findings by clear and convincing evidence on the petition and reiterated it

6

had already found ICWA did not apply and there was no reason to know K.O. was an Indian child. The court bypassed reunification services for Mother.

Thereafter, the Agency continued to note the juvenile court had found ICWA did not apply and that there was no new information regarding ICWA.

*Termination of Parental Rights*

Father made some progress but continued to struggle with substance abuse and housing issues. In January 2019, the Agency recommended the juvenile court terminate reunification services for Father and, in March 2019, the juvenile court terminated Father's reunification services for both K.M. and K.O. In addition, the court made additional findings that ICWA did not apply to either child.

After several continuances, the juvenile court held a section 366.26 hearing on February 24, 2020. The Agency recommended a permanent plan of adoption for K.M. and K.O. The juvenile court accepted the Agency's recommendation and terminated Mother and Father's parental rights as to K.M. and K.O. In written orders issued the same day, the juvenile court found, "Notice pursuant to the Indian Child Welfare Act is not required because the court KNOWS the child is not an Indian child. Reasonable inquiry has been made to determine whether the child is or may be an Indian child."

Mother and Father appeal.

DISCUSSION

Mother and Father's sole assertion on appeal is that the juvenile court failed to comply with ICWA because the court and Agency did not conduct adequate inquiry into Father's Indian heritage. The Agency contends Father's appeal must be dismissed as untimely, asks us to augment the record and take judicial notice of court documents related to the dependency

7

cases concerning siblings of K.M. and K.O., and asserts it did conduct reasonable inquiry into Father's Indian heritage. Before addressing the parents' arguments regarding ICWA, we address the Agency's motions.

I

### *Agency's Motion to Dismiss Father's Appeal*

Father concedes his notice of appeal was not timely filed and the Agency asserts his appeal must be dismissed as a result.

The timely filing of a notice of appeal is a jurisdictional matter. (*Mauro B. v. Superior Court* (1991) 230 Cal.App.3d 949, 953.) This court does not have the authority to extend the time to appeal or discretion to excuse a late-filed notice of appeal. (California Rules of Court, rule 8.104(b); *Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56; *In re Z.S.* (2015) 235 Cal.App.4th 754, 768-769 (*Z.S.*).) Moreover, as Father also concedes, the constructive filing doctrine is generally not available in juvenile dependency matters, even when the failure to timely file the notice of appeal was the result of an error by trial counsel.[4] (See *Z.S.,* at p. 769; *In re Ricky H.* (1992) 10 Cal.App.4th 552, 559-560; *In re Issac J.* (1992) 4 Cal.App.4th 525, 531-534.)

Here, however, Mother did file a timely notice of appeal and raises the same singular issue as Father. Both Mother and Father assert the Agency failed to conduct adequate inquiry by failing to interview Father's extended family members regarding Father's possible Indian heritage. Although the specifics of their arguments differ in certain respects, Father does not raise

---

[4] The issue of whether a parent in a juvenile dependency case has a right to challenge trial counsel's failure to timely file a notice of appeal from an order terminating parental rights is currently under review by the California Supreme Court. (See *In re A.R.* (Jan. 21, 2020, A158143) (nonpub. opn.), review granted May 13, 2020, S260928.)

8

any independent basis for reversing the juvenile court's orders at issue on appeal. Thus, even if we were to dismiss Father's appeal, we must still decide whether the Agency and the juvenile court conducted adequate inquiry under ICWA before terminating Mother and Father's parental rights. For the reasons set forth *post*, we conclude the Agency and the juvenile court did conduct adequate inquiry and Mother's appeal of the same issue fails on the merits. Accordingly, the Agency's motion to dismiss Father's appeal is moot. (See, e.g., *The Inland Oversight Committee v. City of San Bernardino* (2018) 27 Cal.App.5th 771, 783.)

## II

*Agency's Motions to Augment and for Judicial Notice*

The Agency filed a motion to augment the record and a request for judicial notice. In the motion to augment, the Agency seeks to admit additional evidence from the juvenile dependency case concerning an additional full sibling of K.M. and K.O., born in September 2019. The Agency seeks to admit the juvenile dependency petition in that case, a declaration of paternity signed by Father, and the parentage inquiry and ICWA-020 Parental Notification of Indian Status forms submitted by Mother and Father. The Agency also requests that this court take judicial notice of certain minute orders of the juvenile court regarding the same younger full sibling and Father's older children.

The Agency asserts these documents provide necessary additional evidence Mother and Father have subsequently denied Indian ancestry, which demonstrates any noncompliance with ICWA inquiry requirements constitutes harmless error. We disagree.

The juvenile court found ICWA did not apply to K.M. on May 22, 2017. Thereafter, both Mother and Father consistently indicated they did not have

9

Indian ancestry. The Agency now seeks to admit additional evidence of the parents' denials from the sibling cases, but all of the statements concerning ICWA included therein were similarly made after the juvenile court's May 22, 2017 findings concerning K.M. As the record before this court already establishes both parents began, and continued, to deny Indian heritage following that May 2017 finding, the additional records show nothing more than the parents made consistent statements in the co-pending sibling cases. Those statements do not change the Agency or court's ongoing obligations under ICWA and do not provide any further evidence regarding the relevant question of whether the Agency and juvenile court fulfilled those obligations.

Because the additional records are not necessary or relevant to the issue on appeal, we deny both the Agency's motion to augment the record and the Agency's request for judicial notice. (See *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388-1389 [appellate court's authority to receive additional evidence should be used sparingly]; Code Civ. Proc., § 909.)

III

*ICWA*

A. *Relevant Law and Standard of Review*

"Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes. [Citation.] ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive

10

homes." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*).)[5] California adopted various procedural and substantive provisions of ICWA in 2006; after federal ICWA regulations were amended in 2016, California made conforming amendments to its statutes implementing ICWA which became effective on January 1, 2019. (*Ibid.*)

As this court explained in *D.S.*, the Welfare and Institutions Code now "creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].).)" (*D.S.*, *supra*, 46 Cal.App.5th at p. 1052.)

---

5    Under ICWA and the California law implementing it, " 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see Welf & Inst. Code, § 224.1, subd. (a) [adopting the federal definition].)

Under both the previous and current iterations of the ICWA statutes, the Agency and the juvenile court have had and continue to have "an affirmative and continuing duty" in every dependency proceeding to determine whether ICWA applies. (§ 224.2, subd. (a).)[6] Section 224.2 now provides additional guidance regarding the juvenile court and Agency's inquiry and notice obligations. (§ 224.2, subds. (b)-(f).) Section 224.2 specifies that once a child is placed into the temporary custody of a county welfare department, such as the Agency, the Agency has a duty to inquire whether the child is an Indian child, which "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) "Under both ICWA and California law, ' "extended family member[s]" ' include the child's 'grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).)." (*D.S., supra*, 46 Cal.App.5th at p. 1053.)

---

[6] The current statute provides in relevant part that the juvenile court and Agency "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been filed, is or may be an Indian child. The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) Previously, former section 224.3 provided that courts and county welfare departments "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . is to be, or has been, filed is or may be an Indian child in all dependency proceedings and in any juvenile wardship proceedings if the child is at risk of entering foster care or is in foster care." (Former § 224.3, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 14 (*Isaiah W.*) [discussing former statute].)

Further, if the court or social worker "has *reason to believe* that an Indian child is involved in a [dependency] proceeding," section 224.2 requires additional inquiry, which includes but is not limited to "[i]nterviewing the parents, Indian custodian, and extended family members to gather the information required [by the notice provisions set forth in section 224.3, subdivision (a)(5)]," "[c]ontacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member," and "[c]ontacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(A)-(C), italics added.) If that further inquiry indicates there is *reason to know* the child is an Indian child, the Agency must provide notice to the tribes in accordance with section 224.3, subdivision (a)(5). (§ 224.2, subd. (f).)

"The juvenile court may alternatively make a finding that ICWA does *not* apply because the Agency's further inquiry and due diligence was 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered. (§ 224.2, subds. (i)(2), (g).) Even if the court makes this finding, the Agency and the court have a continuing duty under ICWA, and the court 'shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry.' (§ 224.2, subd. (i)(2).)" (*D.S.*, *supra*, 46 Cal.App.5th at p. 1050.)

When the juvenile court issued the order here, the term "reason to believe" was not statutorily defined. The Legislature has since amended section 224.2, subdivision (e), to provide: "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker,

13

or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know [that a child is an Indian child] enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e)(1); see Stats. 2020, ch. 104, § 15, eff. Sept. 18, 2020.)

The grounds giving rise to a "reason to know" that a child is an Indian child, in turn, are as follows: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child. [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village. [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

On appeal, we review the juvenile court's ICWA findings for substantial evidence. (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051; *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) Where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*D.S.*, at p. 1051.)

14

B. *Analysis*

Mother asserts the juvenile court erred at the section 366.26 hearing by finding reasonable inquiry had been made to determine whether the children were Indian children because the Agency failed to interview Father's extended family members.

The juvenile court determined that ICWA did not apply to K.M. on May 22, 2017 and that ICWA did not apply to K.O. on December 7, 2017. However, the court and Agency's duty to inquire remained ongoing and the ICWA findings at issue in the present appeal are those subsequently made at the section 366.26 hearing on February 24, 2020. (See § 224.2, subd. (a); *Isaiah W., supra*, 1 Cal.5th at p. 15 [applying ICWA law in effect at time of order terminating parental rights]; *In re A.M.* (2020) 47 Cal.App.5th 303, 320-321 (*A.M.*) [same].) Thus, the specific question before this court is whether substantial evidence supports the court's findings as of February 24, 2020 that reasonable inquiry had been made and that ICWA did not apply to either child under the law in effect at the time. (*A.M.*, at p. 321.)

At the outset of K.M.'s dependency case, Father indicated he had Indian heritage on his mother's side and provided the name of his maternal great grandfather he believed was half Cherokee. Based on this information, the Agency indicated ICWA "does or may apply" and the juvenile court ordered Father to complete the ICWA-030 form and provide additional information to the Agency.

In accordance with its duty of further inquiry, the Agency followed up with Mother, Father, and some maternal relatives,[7] conducted interviews with the assistance of an ICWA social worker, and sent out ICWA notices

---

[7] As previously noted, the Agency also referred to an interview with a paternal aunt but it appears the reference was in fact to a maternal aunt.

15

with the information it was able to gather. Father provided additional information to the Agency regarding his relatives, but it appears he did not complete the ICWA-030 form as the court ordered. Father indicated he had given the ICWA-030 form to his brother, and the court asked Father to provide the Agency with contact information for the brother.[8] Later, Father indicated he provided the form to a cousin in Arizona who tracked the family's lineage, but that his cousin had not returned the form or provided him with any information regarding Native American heritage.

As of May 22, 2017, the Agency had completed noticing to the Department of the Interior, the Bureau of Indian Affairs, and three identified Cherokee tribes with the information it was able to gather, and each tribe had indicated K.M. was not eligible for enrollment. The juvenile court found the Agency had made adequate inquiry and there was no reason to believe ICWA applied. Thereafter, neither Mother, Father, nor anyone else involved in the case provided any further information regarding their own Indian heritage, indicating anyone else had information regarding such heritage, or suggesting the children were Indian children, and the court once again concluded ICWA did not apply before terminating parental rights on February 24, 2020.

Mother asserts the juvenile court erred in finding the Agency's inquiry efforts were adequate because the Agency failed to interview Father's extended family members. Under both ICWA and California law, " 'extended family member[s]' " includes "the Indian *child's* grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2), italics added; see § 224.1,

---

[8] The court refers to an "uncle," presumably because Father's brother would be considered the children's uncle.

16

subd. (c) ["As used in connection with an Indian child custody proceeding, the term[] 'extended family member' . . . shall be defined as provided in Section 1903 of the federal [ICWA]"].) Here, the record indicates Father had a stepfather and a brother that he remained in contact with, as well as a cousin in Arizona that he at least attempted to contact, but the record does not indicate that the Agency interviewed these individuals regarding ICWA.

However, the record does not establish whether the brother or the cousin were blood relatives of Father's, or whether they were instead related through Father's stepfather—thus falling outside the definition of " 'extended family member[s].' "[9] Moreover, *Father's* cousin (even assuming this was a blood relative) and stepfather do not meet the statutory definition of extended family members. Assuming this was Father's first cousin, that means that the individual was the children's first cousin once removed. (Black's Law Dict. (11th ed. 2019).) Under the statute, only first and second cousins of the child at issue meet the definition of extended family.[10] Similarly, the "stepfather" here was *Father's* stepparent—not "the Indian child's . . . stepparent" as required under ICWA. (25 U.S.C. § 1903(2).)

Beyond the duty to interview extended family members, the Agency also had an obligation to contact "any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(C); *D.S.*, *supra*, 46 Cal.App.5th at p. 1053.) The court ordered Father to provide the Agency with contact information for the brother (the children's uncle, assuming this was a blood

_____

[9]    See footnote 2, *ante*.

[10]    A "second cousin" is "[a] person related to another by descending from the same great-grandfather or great-grandmother." (Black's Law Dict. (11th ed. 2019).)

17

relative), and it appears the Agency did eventually contact this individual.[11] But there is no indication that Father provided contact information for his cousin in Arizona to allow the Agency to follow up, and there similarly is no record of the Agency interviewing Father's stepfather.[12]

Despite these defects in the record, however, substantial evidence supports the conclusion that these individuals did not have any additional relevant information. Father specifically stated his Indian heritage was all on his mother's side and provided information regarding his maternal grandparents and great-grandparents. Thus, there was no indication his stepfather had any relevant information regarding that heritage. Although Father provided the ICWA form to his brother, it seems the brother was not able to provide additional information or fill out the form as Father never returned the form and instead sent it to his cousin in Arizona soon thereafter. In addition, Father reported his cousin had not returned the form or provided Father with any information regarding Native American heritage. And Father then stated in November 2017 that he did not have Indian ancestry. Thus, while the Agency and the court may have initially thought that Father's brother or cousin had additional relevant information, there was substantial evidence, as of February 2020, to support a finding that they no longer had reason to believe either child was an Indian child.

---

[11]    Unfortunately, however, the record does not indicate whether the Agency asked him about Father's Indian heritage or details regarding any such inquiry.

[12]    As the juvenile court had an independent responsibility to determine whether the Agency conducted an adequate investigation, it would have been preferable for the court to have sought clarification regarding the Agency's attempts to contact these individuals on the record. (See *In re K.R.* (2018) 20 Cal.App.5th 701, 709.)

Mother asserts the Agency's failure to interview the brother, cousin, or any of Father's extended family members was nevertheless reversible error, but the cases she relies upon do not support her position. In *In re E.R.* (2018) 28 Cal.App.5th 74, the father indicated a paternal great-grandmother " 'would know more' " about the family's Indian heritage and provided her name and phone number to the Agency. (*Id*. at p. 79.) The Agency failed to interview the paternal great-grandmother and neglected to include the information in its reports to the juvenile court. (*Id*. at pp. 79, 83-84.) The Agency conceded it did not comply with ICWA. (*Id*. at p. 84.) Similarly, in *In re Michael V.* (2016) 3 Cal.App.5th 225 (*Michael V.*), the mother indicated the maternal grandmother was an actual tribal member, but the Agency made no effort to locate or contact her or any other family members. (*Id*. at pp. 235-236.) The mother further indicated that she had been involved in juvenile court proceedings herself as a child and a social worker said the grandmother, who was absent from mother's life, was " 'full-blood Indian' " and a member of two tribes. (*Id*. at p. 230.) To the contrary, here, the limited information provided by Father was much less certain. The Agency included the information regarding the Father's stepfather, brother, and cousin in its reports, Father did not identify any other relatives, and additional information indicated none of the identified relatives had any further relevant information.

The facts of this case are more akin to *A.M.,* in which the court concluded that while the mother's statements regarding the possibility of Indian heritage triggered a requirement for further inquiry and the Agency failed to interview any maternal relatives, the mother could not establish any error because the Agency did not have any viable leads to obtain any further information relative to Mother's Indian heritage. (See *A.M.*, *supra*,

47 Cal.App.5th at pp. 322-323.) We acknowledge this case differs insofar as the mother in *A.M.* had not identified any living relatives and, here, Father identified his stepfather, brother, and cousin. (See *id*. at p. 323.) However, as discussed, by February 2020, there was evidence in the record indicating those relatives did not have any relevant information regarding Father's alleged Indian heritage. As in *A.M.*, the Agency in this case made efforts to investigate the claim Father made and to gather the information that was available, and the parents cannot establish error based on the Agency's failure to interview relatives where substantial evidence indicates they did not have any further relevant information. (See *ibid*. ["There is no need for further inquiry if no one has offered information that would give the court or [the agency] reason to believe that a child might be an Indian child. This includes circumstances where parents 'fail[] to provide any information requiring followup.' "]; *D.S.*, *supra*, 46 Cal.App.5th at p. 1053 ["The Agency is not required to 'cast about' for information or pursue unproductive investigative leads."].)

Moreover, the Agency also fulfilled its obligation to contact the pertinent tribes and to "shar[e] information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C); *D.S.*, *supra*, 46 Cal.App.5th at p. 1050.) The Agency provided notice to the three identified Cherokee tribes, including information regarding Father's mother, father, maternal great-grandmother, and paternal great-grandfather, and all three tribes indicated K.M. was not eligible for enrollment. (See *D.S.*, at p. 1050.) Mother asserts the notice was incomplete due to the Agency's failure to interview the Father's brother, cousin, or other extended family members but, as discussed, the record

20

suggests neither the brother nor the cousin had any additional relevant information.

As a final matter, Mother asserts there is no evidence the Agency contacted the California Department of Social Services regarding K.M. or any governmental agency regarding K.O., as required by section 224.2, subdivision (e)(2)(B). The Agency did, however, provide notice to the Department of the Interior and the Bureau of Indian Affairs, as required under the relevant statutes at the time. (See *Michael V.*, *supra*, 3 Cal.App.5th at p. 232). By February 2020, when the juvenile court made the ruling at issue in this appeal, the Agency had conducted adequate inquiry, no new information had been provided, and there was no longer any reason to believe K.M. or K.O. were Indian children. (See § 224.2, subds. (i)(2), (g); *A.M.*, *supra*, 47 Cal.App.5th at p. 321.) Thus, the Agency was under no obligation to send additional notices to any additional government agencies, and there is no reason to believe any additional notices would have resulted in any additional relevant information.

For these reasons, we conclude substantial evidence supported the juvenile court's findings at the section 366.26 hearing that reasonable inquiry had been made and there was no reason to know the children were Indian children.[13]

---

[13]     As noted *ante*, section 224.2 was recently amended to provide that "reason to believe" exists when there is information "that indicates, but does not establish," the grounds for "reason to know" set forth in subdivision (d). Although this provision was not in effect when the juvenile court terminated Mother and Father's parental rights, our conclusions would be the same in any event even considering the amended definition.

## DISPOSITION

The judgments are affirmed.


GUERRERO, J.

WE CONCUR:



HALLER, Acting P. J.



AARON, J.